# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Case No. 24-13445-KHT |
| | ) | |
| INK! COFFEE COMPANY | ) | Chapter 11, Subchapter V |
| | ) | |
| Debtor. | ) | |
| | ) | |

## SECOND AMENDED SUBCHAPTER V PLAN
## DATED NOVEMBER 4, 2024

Ink! Coffee Company, debtor and debtor in possession ("Debtor" or "Ink! Coffee"), hereby proposes, pursuant to subchapter V of chapter 11 of Title 11 of the U.S. Code, the following Amended Subchapter V Plan Dated November 4, 2024 (this "Plan").

## I.     INTRODUCTION

Subchapter V, Chapter 11 of Title 11 of the United States Code ("Subchapter V") is designed to allow for the rehabilitation and reorganization of financially troubled entities or individuals. Subchapter V allows a debtor to retain its assets during administration of a Subchapter V case as a debtor-in-possession and following confirmation of a plan as a reorganized debtor or as provided in the plan. Once the Plan is confirmed by the Bankruptcy Court, the Plan, and all supporting documents attached thereto, is the permanent restructuring of Debtor's financial obligations and is the governing document, or contract, with creditors and owners.

This Plan contemplates that Debtor will sell all or substantially all of its assets. This Plan further provides the mechanism for distributing Available Cash (as defined below) to holders of Allowed Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims, following the consummation of a sale of all or substantially all of Debtor's assets.

Debtor's Plan divides creditors into Classes[1] of similarly situated creditors. All creditors of the same Class are treated in a similar fashion. All ownership interests in Debtor are also classified and treated alike. Each Class of creditors or Equity Interest holders is either impaired or unimpaired under the Plan. A Class is unimpaired if the Plan leaves unaltered the legal, equitable and contractual rights to which each creditor or Equity Interest holder in the class is entitled. Alternatively, a claimant is unimpaired if the Plan provides for the cure of a default and reinstatement of the maturity date of the Claim as it existed prior to the default. **IF YOU ARE A CREDITOR OR EQUITY INTEREST HOLDER, YOUR RIGHTS MAY BE IMPAIRED BY THE PLAN.**

---

[1] All capitalized terms not otherwise defined herein have the meaning set forth in Article III, Definitions.

The Bankruptcy Court set a bar date establishing **August 29, 2024** as the last date for filing Proofs of Claim for all creditors except governmental units. The Plan provides that Claims and Equity Interests of all classes shall be allowed only if evidenced by a timely filed Proof of Claim or Equity Interest or which otherwise appear in the schedules filed by Debtor and are not scheduled as disputed, contingent or unliquidated unless subsequently allowed by the Bankruptcy Court. Creditors may check as to whether or not their Claims have been scheduled as disputed, contingent or unliquidated by reviewing the Schedules filed by Debtor with the Bankruptcy Court. Alternatively, creditors may contact counsel for Debtor directly to determine how they have been scheduled.

This Plan and the disclosures contained herein are being provided to all known creditors and Equity Interest holders of Debtor. This Plan is subject to confirmation pursuant to section 1191 of the Bankruptcy Code by the Bankruptcy Court. Issues related to the merits of the Plan and its confirmation will be the subject of a Confirmation Hearing pursuant to an Order of the Bankruptcy Court which will be served upon you.

## II.   **BACKGROUND**

### A.   **Brief History of Debtor's Business Operations**

1.   **Overview of Debtor.**

Debtor was started in 1994 with a stainless-steel cart at the base of Snowmass Mountain. From 1994 through 2019 Debtor grew to include a specialty roasting operation and 16 retail locations throughout the Denver metro area and Aspen. In 2019, Debtor had approximately $4,935,569 in revenues.

At the commencement of this case, Debtor roasted and sold exceptional coffee and sold locally sourced prepared foods from 4 retail locations in the Dever area: in the Cherry Creek Shopping Center, in the National Jewish Health hospital, in the lobby of 1801 California Street in Denver, and on University Boulevard in the Bonnie Brae neighborhood. Ink! Coffee also maintained an office and roastery where Alpine Coffee roasted all of Ink! Coffee's beans in Aurora, Colorado, under Ink! Coffee's supervision. During the case, Ink! Coffee was required to change roasters as the result of damage to Alpine Coffee's location. Debtor has 26 full and part-time employees.

2.   **Events Leading Up to Subchapter V Case.**

Through 2019 Debtor was a thriving and growing business that operated at 16 locations, many of which were located in office buildings in or near downtown Denver. Debtor also had locations in Aspen and the RiNO neighborhood in Denver. As part of its expansion, in December 2019, Debtor obtained a nearly $2 million SBA-guaranteed loan.

In 2020, the stay-at-home orders resulting from the COVID-19 pandemic turned off Debtor's business like a light switch. In the early stages of the pandemic, Debtor obtained a PPP loan, which was substantially forgiven, and $500,000 worth of Small Business Administration EIDL loans. The pandemic relief loans did not change the reality that the office workers that kept

many of Debtor's retail locations alive did not return to the office. As a result, since 2020, Debtor was forced to shutter all but 4 of its locations. Since 2020, Debtor has also reduced expenses and made many efforts to adjust to the current economic climate, including raising its prices and eliminating less profitable menu items.

The store closures and expense reductions, however, did not solve all of Debtor's problems. Since 2020, changes in the local economy, including a massive increase in wages, difficulty finding employees, and substantial increases in the cost of goods, among others, further squeezed Ink! Coffee's finances. Faced with debt from a 16-store platform and a new economic landscape that appeared to be here to stay, in 2023, Debtor continued to reduce expenses and undertook a nearly year-long effort to preserve the value of its business through a going concern sale, investment, or other transaction that would enable Debtor to meet its financial obligations.

In April 2023, Debtor approached $r^2$ advisors LLC ("$r^{2}$") to discuss how $r^2$ may be able to help Debtor preserve the value of its business through a transaction or longer-term capital source to enable it to service its debt and fund continued operations. From the time of Debtor and $r^2$'s initial meeting in April 2023 through June 2023, $r^2$ reviewed information regarding Debtor and developed marketing materials, including a pitch deck. $r^2$ also prepared a list of 89 prospects who $r^2$ believed may be interested in exploring the possibility of a financial transaction with Debtor, including existing market participants, competitors, and others. In June 2023, $r^2$ began active marketing efforts, including contacting each of the 89 prospects $r^2$ identified. $r^2$ made contact with 37 of its potential prospects, 9 of whom ultimately signed nondisclosure agreements.

In 2023 and early 2024, Debtor took out three merchant cash advance loans in anticipation of finding a transaction or longer-term capital source to enable it to service its debt and fund continued operations. The merchant cash advance lenders automatically withdrew approximately $10,000 per week from Debtor's bank account, which intensified pressure on Debtor's finances.

After the year of marketing efforts and discussions with potential interested parties, Debtor and $r^2$ identified only one party willing to consummate a potential transaction: Mr. Leevers. Mr. Leevers made an offer to purchase substantially all of Debtor's assets. Debtor approached its senior secured lender about the transaction and how to accomplish it. Debtor is informed that while the lender was not necessarily opposed to the transaction, it was not in a position to consent or facilitate the transaction through a foreclosure sale of Debtor's assets. Debtor filed this bankruptcy case to consummate the potential sale for the benefit of its creditors through a chapter 11 plan.

**B.     Description of Assets.** Interested parties may obtain detailed information about Debtor's assets from Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs [Docket Nos. 79-85] and Amended Schedules of Assets and Liabilities and Statement of Financial Affairs [Docket Nos. 97-101] (as may be further amended, the "Schedules"). The material assets Debtor listed in its Schedules as of the Petition Date are summarized as follows:

| Asset | Book Value |
|-------|-----------|
| Cash and Cash Equivalents | $5,460.00 |

| Bank Accounts | $39,042.90 |
| Lease Deposits | $8,677.50 |
| Accounts Receivable | $6,669.79 |
| Inventory (Est. at retail value) | $37,582.26 |
| Furniture, Fixtures, Equipment | $57,623.00[2] |
| Intangibles and Intellectual Property | Unknown |

**C.     Description of Prepetition Liabilities.** Interested parties may obtain detailed information about Debtor's prepetition liabilities from the Schedules. These liabilities are summarized as follows:

**NOTE THAT UNLESS OTHERWISE SPECIFICALLY ALLOWED IN THIS PLAN OR BY PRIOR COURT ORDER, DEBTOR MAY OBJECT TO ANY CLAIM OR EQUITY INTEREST FILED OR SCHEDULED IN THE CASE. A DESCRIPTION OF THE AMOUNT OF A CLAIM DOES NOT MEAN THAT IT HAS BEEN ALLOWED.**

     **1.     Priority Non-Tax Claims**. "Priority Non-Tax Claims" are prepetition claims entitled to priority payment under 11 U.S.C. § 507(a), but excluding Administrative Claims and Priority Tax Claims for the purposes of this definition. Purchasers of unredeemed gift cards may assert Priority Non-Tax-Claims; however, the proposed Stalking Horse (as defined later) has agreed to honor all gift cards.

     **2.     Priority Tax Claims**. "Priority Tax Claims" are claims of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8). Debtor listed debts for prepetition sales taxes owed to various governmental units in the aggregate amount of $62,378.50 (the "Sales Tax Claims"), which, to extent they are unsecured, are Priority Tax Claims. Debtor asserts the Sales Tax Claims and claims for personal property taxes of the City and County of Denver (the "Personal Property Tax Claims") in the amount of $7,753.89 are secured and they are treated below as Secured Claims, except that the City of Aurora filed its proof of claim number 19-1 in the amount of $3,946.24 for sales taxes; however, it did not assert a secured claim. Instead, it asserted $3,500 as entitled to administrative priority under 11 U.S.C. § 507(a)(8).[3]

     **3.     Secured Claims**. On the Petition Date, Debtor owed the following secured claims, excluding lease debt secured by deposits:

---

[2] This estimated value is on a cost basis.
[3] Debtor believes the proof of claim was based on an estimate that resulted from a late sales tax return, which has since been filed and showed no material sales in Aurora or sales tax liability.

| Creditor | Source of Information | Amount Owed | Ink! Coffee Collateral | Perfection Date |
|---|---|---|---|---|
| State of Colorado Department of Revenue (sales tax owed) | POC 2-1 | $33,991.43 | Goods and business fixtures, excepting stock of goods sold or for sale in the ordinary course of business | **N/A** Colo. Rev. Stat. § 39-26-117(1)(a) |
| City and County of Denver (personal property tax and sales taxes) | Amended Schedule D/E/F [Docket No. 98] | $23,000 | Business personal property; Goods and business fixtures, excepting stock of goods sold or for sale in the ordinary course of business | **N/A** Colo. Rev. Stat. § 39-1-107(2); Colo. Rev. Stat. § 39-26-117(1)(a) |
| Newtek Small Business Finance LLC (SBA guaranteed) | POC 15-1 | $1,633,171.10 | Substantially all assets | 12/10/2019 |
| Small Business Administration (EIDL loans) | POC 25-1 | $535,215.30 | Substantially all assets | 6/5/2020 |
| ARF Financial LLC as successor to Timberland Bank | POC 18-1 | $202,303.84 | Substantially all assets | 7/14/2023 |
| Kapitus LLC | POC 30-1 | $59,455.0. | Substantially all assets | 2/7/2024 |
| Fox Funding Group LLC | POC 24-1 | $131,625.00 | accounts receivable and payment rights arising out of or relating to for Merchant's sale or delivery of goods and/or services due after the date of the agreement | 3/14/2024 |

Debtor notes that pursuant to the approved cash collateral budget, it has made certain payments to the City and County of Denver, Colorado Department of Revenue, and Newtek Small Business Finance LLC, which reduced the amount owed to those creditors.

    **4.**    **Unsecured Claims.** Claims in Class 5 are comprised of Debtor's Unsecured creditors. A list of holders of Unsecured claims is attached as **<u>Exhibit A</u>**. The list does not include any deficiency claim of creditors identified as secured in Class 4, above. However, pursuant to 11 U.S.C. § 506(b), any portion of the Secured Claims that exceeds the value of the collateral securing such claim shall be treated as an Unsecured Claim in Class 5.

## D.    Filing of Subchapter V Case and First Day Motions

Debtor filed this Subchapter V case (the "<u>Subchapter V Case</u>") on June 20, 2024, in the Bankruptcy Court. On June 21, 2024, Mark D. Dennis was appointed as the Subchapter V trustee [Docket No. 18] (the "<u>Subchapter V Trustee</u>").

Shortly after the Petition Date, Debtor filed its "first day" motions, requesting emergency relief necessary to maintain and continue its operations in the ordinary course [Docket Nos. 13, 14, 15, 18, 19, and 20].  After the first day hearing on June 26, 2024 [Docket No. 36], the Bankruptcy Court entered the following orders:

    a.    Order Granting Debtor's Motion for Entry of Order Authorizing Debtor to (A) Continue Customer Practices, Including Honoring Prepetition Gift Cards, Customer Programs, and (B) Sell Gift Cards Postpetition [Docket No. 39];

    b.    Interim Order (I) Authorizing Use of Cash Collateral; (II) Granting Adequate Protection; (III) Setting a Final Hearing on Use of Cash Collateral; and (IV) Granting Related Relief [Docket No. 37];

    c.    Order Authorizing Debtor to (A) Pay Prepetition Wages, Salaries, and Other Compensation; (B) Continue Employee Benefit Programs; and (C) For Related Relief [Docket No. 38]; and

    d.    Interim Order Granting Debtor's Motion for Entry of Interim and Final Orders Authorizing Debtor to Obtain Unsecured Credit.[Docket No. 59].

Following additional notice, the Bankruptcy Court entered the following orders on a final basis:

    a.    Second Interim Order (I) Authorizing Use of Cash Collateral; (II) Granting Adequate Protection; (III) Setting a Final Hearing on Use of Cash Collateral; and (IV) Granting Related Relief [Docket No. 70]; and

    b.    Final Order Granting Debtor's Motion for Entry of Interim and Final Orders Authorizing Unsecured Credit"). [Docket No. 76].

**E.      Employment of Professionals**

On June 20, 2024, Debtor filed its Application to Employ ONSAGER | FLETCHER | JOHNSON | PALMER LLC ("OFJP") as its counsel in this Subchapter V Case, which the Bankruptcy Court granted on June 21, 2024. OFJP has not yet filed a fee application.

On June 20, 2024, Debtor filed its Motion to employ $r^2$ as marketing agent and financial advisor, which the Court granted on June 21, 2024. $r^2$ has not yet filed a fee application.

On September 13, 2024, Debtor filed an application to employ Smith, Brooks, Bolshoun & Co LLP as accountant to prepare Debtor's 2023 tax returns for a flat fee of $4,950.00. [Docket No. 115]. As of the date of this Plan, the Court had not yet entered an order on the motion.

**F.      Significant Postpetition Events / The Proposed Sale**

As described above, $r^2$ engaged in nearly a year-long effort to market a potential sale or equity transaction for Debtor prior to the commencement of the bankruptcy case. Debtor filed this bankruptcy case to accomplish a sale of substantially all of its assets. This Plan provides for that proposed sale. On August 28, 2024, Debtor filed two motions in support of the proposed sale process:

• Motion for Order Authorizing and Approving: (A) Bid Procedures for the Going Concern Sale of Substantially All of Debtor's Assets; (B) Notice of Sale by Auction; (C) the Auction; and (D) Stalking Horse Bid and Bid Protections; and (E) Granting Related Relief (the "Bid Procedures Motion"). In the Bid Procedures Motion, Debtor requests that the Court approve certain bid procedures (the "Bid Procedures") in connection with the anticipated sale of Debtor's assets and approve an Asset Purchase Agreement (the "APA") with Boria Capital LLC (the "Stalking Horse") for a purchase price that consists of $100,000 in cash (the "Cash Sale Proceeds") and the deemed satisfaction of $36,000 of unsecured credit obtained post-petition from Chris Leevers and $164,000 from the DIP Loan. The proposed APA also provides for a $9,000 break-up fee and $5,000 expense reimbursement, in the event the Stalking Horse is not the successful bidder. The Bid Procedures Motion is filed at Docket No. 106; and

• Motion for Order Authorizing Debtor-in- Possession Financing (the "DIP Loan Motion") for a proposed secured (but not priming) loan of up to $164,000 with the Stalking Horse (the "DIP Loan"). Thus, the DIP Loan Motion, the proposed sale to the Stalking Horse, and the Bid Procedures Motion are integrated. The DIP Loan Motion is filed at Docket No. 108.

The deadline for parties in interest to file objections to the Bid Procedures Motion and the DIP Loan Motion was September 20, 2024. Newtek filed objections to the Bid Procedures Motion and the DIP Loan Motion. The United States Trustee filed an objection to the DIP Loan Motion. Ink! Coffee filed an amended proposed order granting the Bid Procedures and an amended proposed order granting the DIP Loan Motion and [Docket Nos. 123-2 and 123-6, respectively].

As a result, Newtek and the United States Trustee withdrew their objections. On October 22, 2024, the Court entered an Order approving the DIP Loan, as amended [Docket No. 130], and an order approving the Bid Procedures, as amended [Docket No. 131] The following is a summary of certain dates set forth in the Bid Procedures, as amended:

| Sale Notice | 2 days after Court approval of the Bid Procedures |
| --- | --- |
| Bid Deadline | October 28, 2024 at 5:00 p.m. MDT |
| Auction Notice | October 30, 2024 |
| Auction | November 1, 2024 at 10:00 a.m. MDT |
| Notice of Auction Results | November 4, 2024 |
| Closing | No later than November 18, 2024, or within 7 days of the entry of an order confirm the Debtor's plan, if later |

No bids were received by the Bid Deadline, which caused Debtor to file a notice that it would not conduct an auction.

### III.   **DEFINITIONS**

1.   Administrative Claim: Any Claim for costs and expenses of administration under Bankruptcy Code Sections 503(b), 507(b) or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the estate and operating the business of any Debtor (including wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Sections 330(a) or 331; and (c) all fees and charges assessed against the estate under Title 28 United States Code, 28 U.S.C. §§ 1911-1930.

2.   Allowed: When used in connection with a Claim or Administrative Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by Debtor in its Schedules as other than as Disputed and as to which a party in interest has not filed a timely objection; (b) a POC which was filed on or before the Claims Bar Date, or filed after such date with leave of the Bankruptcy Court, to which a timely objection has not been filed to such claim; (c) a Claim that has been allowed by a Final Order, or by stipulation as to the amount and nature of Claim executed with Debtor on or after the Effective Date; (d) a Claim relating to a rejected executory contract or unexpired lease as to which a party in interest has not filed a timely objection, or has been allowed by a Final Order, in either case only if a POC has been filed within 30 days from the Confirmation Date or has otherwise been deemed timely filed under applicable law; or (e) a Claim that is allowed pursuant to the terms of this Plan.

3.     <u>Available Cash</u>: Cash available to Debtor after the Effective Date which is not subject to a Lien securing an Allowed Claim and is not anticipated to be needed for the operation or wind-down of the Debtor or for post-confirmation expenses. Available Cash includes but is not limited to avoidance action or litigation recoveries, if any.

4.     <u>Bankruptcy Code</u>: The Bankruptcy Reform Act of 1978, Title 11 of the United States Code, as amended from time to time, as set forth in Sections 101 *et seq.* of Title 11 of the United States Code, and applicable portions of Titles 18 and 28 of the United States Code. All references to "Section" are references to sections of the Bankruptcy Code.

5.     <u>Bankruptcy Court</u>: The United States Bankruptcy Court for the District of Colorado or any other court of the United States with authority over this bankruptcy case.

6.     <u>Bid Procedures</u>: defined above.

7.     <u>Cash Sale Proceeds</u>: defined in section II(F), above.

8.     <u>Claim</u>: A claim (as defined in 11 U.S.C. § 101(5)) against Debtor, including: (a) any right to payment from a debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmeasured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmeasured, disputed, undisputed, secured or unsecured.  "Claim" shall not include unmatured or unearned interest as of the Petition Date on the amount of any Claim except as permitted by the Bankruptcy Code or except as expressly provided otherwise in this Plan.

9.     <u>Claims Bar Date</u>: August 29, 2024, which is the date by which non-governmental entities were required to submit proofs of claim in the Bankruptcy Case.

10.     <u>Class</u>: A category of holders of Claims or Equity Interests as set forth in the Plan.

11.     <u>Confirmation Date</u>: The date on which the Bankruptcy Court enters the Confirmation Order.

12.     <u>Confirmation Order</u>: The order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

13.     <u>Debtor</u>: Ink! Coffee Company, which definition includes such entity as reorganized pursuant to this Plan.

14.     <u>Deficiency Claim</u>: That portion of a Claim that exceeds the value of the interest of the holder of such Claim in Debtor's interest in property subject to a Lien.

15.     <u>DIP Financing Order</u>: Any Final Order entered by the Bankruptcy Court approving the DIP Loan.

16.     <u>DIP Loan Claim</u>: The Claim held by the Stalking Horse pursuant to any order approving the DIP Loan Motion, which shall consist of the total obligations due and owing under the DIP Financing Order and the debtor-in-possession financing agreement as approved by the DIP Financing Order.

17.     <u>Disputed Claim</u>: Any Claim: (a) listed on the Schedules as unliquidated, disputed or contingent; or (b) as to which Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

18.     <u>Effective Date</u>: The first day after the later to occur of the Confirmation Date or Sale Notice Date, or, if an appeal is taken and the Confirmation Order or Sale Order is stayed, the first business day after the later of the date (a) the stay expires by its own terms, or (b) the order vacating or terminating the stay becomes a Final Order.

19.     <u>Enjoined Claim</u>: All entities and persons, and any successor, assigns or representatives of such entities and persons, who have held, hold, or may hold Claims, rights, causes of action, liabilities, or any other interests based on any act or omission, transaction, or other activity of any kind or nature related to Debtor or the Subchapter V Case that occurred prior to the Effective Date. See definition in Article IX, paragraph H1.

20.     <u>Equity Interest</u>: Any legal or beneficial equity interest in Debtor as of the Petition Date, together with any warrants, options or contract rights to purchase or acquire such interests at any time, including without limitation (a) common and preferred stock, as set forth on **Exhibit B**, (b) any rights to acquire equity interests under any Restricted Membership Interest Grant Agreements and Debtor's equity plan (if any), and (b) any profit interest rights under any Profits Interest Grants Agreements.

21.     <u>Final Order</u>: An order no longer subject to appeal, review or certiorari proceedings.

22.     <u>General Unsecured Claims</u>: Non-priority Unsecured Claims arising from the rejection of executory contracts and/or unexpired leases with landlords.

23.     <u>Lien</u>: A lien, security interest or charge against property to secure payment of a debt or performance of an obligation, whether obtained by consensual means or by judgment, levy, sequestration, or other legal or equitable process or proceeding.

24.     <u>OFJP</u>: ONSAGER | FLETCHER | JOHNSON | PALMER LLC, Debtor's bankruptcy counsel as described in Article II, paragraph E.

25.     <u>Person</u>: As defined in 11 U.S.C. § 101(41).

26.     <u>Petition Date</u>: June 20, 2024.

27.     Priority Claims: Prepetition unsecured claims entitled to priority in payment, as defined in Article II, paragraph C1.

28.     Priority Tax Claims: A Claim against any Debtor of a governmental unit of the kind specified in 11 U.S.C. § 507(a)(8).

29.     Purchaser: The successful bidder pursuant to the Bid Procedures.

30.     Sale: The anticipated sale, subject to Bankruptcy Court approval, of all or substantially all of Debtor's assets pursuant to this Plan and the related Bid Procedures.

31.     Sale Notice Date: The date on which Debtor files a notice with the Bankruptcy Court that the Sale has been consummated.

32.     Schedules: The Schedules of Assets and Liabilities and Statement of Financial Affairs [Docket Nos. 93-99] and Amended Schedules of Assets and Liabilities and Statement of Financial Affairs [Docket Nos. 187, 189-193], which were filed by Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as such schedules may be amended or supplemented from time to time pursuant to Bankruptcy Rule 1009.

33.     Secured Claim: A Claim (a) that is secured by a Lien on property in which the Debtor's estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under 11 U.S.C. § 553 or avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the Claim holder's interest in the estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to 11 U.S.C. § 506(a), or  (b) Allowed under this Plan as a Secured Claim, including capital leases.

34.     Subchapter V Case: Case No. 24-13445-KHT, as defined in Article II, paragraph D.

35.     Subchapter V Trustee: Mark D. Dennis, as defined in Article II, paragraph D.

36.     Unsecured Claim: Any Claim against any Debtor that is not a Secured Claim, Administrative Claim or Priority Claim, or including Claims arising from the rejection of executory contracts and/or unexpired leases, Deficiency Claims, and any allegedly secured but unperfected Claims that are not otherwise dealt with in this Plan.

### IV.     PLAN CLASSES, TREATMENT AND MEANS FOR IMPLEMENTATION

**A.  Summary of the Plan**

| Class | Description | Estimated Amount[4] | Treatment | Voting Rights |
|---|---|---|---|---|
| N/A | Allowed Administrative Claims | $20,000 | Allowed Administrative Claims shall be paid from Available Cash. | No voting rights |
| N/A | Priority Tax Claims | None | If any, pro rata payment from Available Cash after satisfaction of Allowed Administrative Claims | No voting rights |
| N/A | Priority Non-Tax Claims for Unredeemed Gift Cards | Unknown | To be honored by any purchaser | |
| 1 | DIP Loan Claim (Secured) | $ 164,000[5] | If Stalking Horse is the Purchaser Deemed satisfaction of claim. If not the Purchaser, then retains liens on post-petition property subject to Carve Out and for junior liens on previously encumbered property, retain liens on proceeds from sale; to be paid remaining Cash Sale Proceeds following satisfaction of Class 2, 3, 4, 5, 6, and 7 Claims; | Unimpaired; not entitled to vote |
| 2 | Sales Tax Claims and Personal Property Tax Claims (Secured) | $69,753.79[6] | Retains liens on proceeds from Sale; to be paid in full from Sale proceeds | Impaired; entitled to vote |
| 3 | Newtek Claim (Secured) | $1,633,171.10 | Retain liens on proceeds from sale; to be paid remaining Cash Sale Proceeds following satisfaction of Class 2 Claims of no less than $75,000; Deficiency Claim will be General Unsecured Claim | Impaired; entitled to vote |

---

[4] The estimated aggregate Claim amounts assumes an Effective Date of October 31, 2024. The General Unsecured Claim Estimated Amount does not include an estimate for the Deficiency Claims

[5] As the filing of this Plan, the DIP Loan has not been ruled on by the Court. This amount assumes the DIP Loan will be approved and fully funded.

[6] These amounts do not reflect reductions made during the bankruptcy case.

| Class | Description | Estimated Amount[4] | Treatment | Voting Rights |
|---|---|---|---|---|
| 4 | SBA (Secured) | $535,215.30 | Retain liens on proceeds from sale; to be paid remaining Cash Sale Proceeds following satisfaction of Classes 2 and 3 Claims; Deficiency Claim will be General Unsecured Claim | Impaired; entitled to vote |
| 5 | ARF Financial LLC / Timberland Bank Claim (Secured) | $202,303.84 | Retain liens on proceeds from sale; to be paid remaining Cash Sale Proceeds following satisfaction of Classes 2, 3, and 4 Claims; Deficiency Claim will be General Unsecured Claim | Impaired; entitled to vote |
| 6 | Kapitus LLC Claim (Secured) | $59,455.00. | Retain liens on proceeds from sale; to be paid remaining Cash Sale Proceeds following satisfaction of Classes 2, 3, 4, and 5 Claims; Deficiency Claim will be General Unsecured Claim | Impaired; entitled to vote |
| 7 | Fox Funding Group LLC Claim (Secured) | $131,625.00 | Retain liens on proceeds from sale; to be paid remaining Cash Sale Proceeds following satisfaction of Classes 2, 3, 4, 5, and 6 Claims; Deficiency Claim will be General Unsecured Claim | Impaired; entitled to vote |
| 8 | General Unsecured Claims | $237,965.37 | Allowed Claims to be paid pro rata from Available Cash after satisfaction of prior claims. | Impaired; entitled to vote |
| 9 | Equity Interests | N/A | Remain in place. | Unimpaired; not entitled to vote |

### B.    Means for Implementation

### 1.    The Sale.

a.    Within 5 business days of the Effective Date or October 31, 2024, whichever is later, Debtor shall consummate the sale of substantially all of its assets to the highest bidder, pursuant to 11 U.S.C. § 1123(b)(4).

b.    Pursuant to 11 U.S.C. § 1129(b)(2(A)(ii), the proposed Sale is subject to 11 U.S.C. § 363(k).

c.    Pursuant to 11 U.S.C. § 1146, the sale and transfer of assets by Debtor pursuant to this Plan and any complementary motions and orders of the Court shall not be subject to any stamp, transfer, or other tax.

**2.    Assumption and Assignment Pursuant to 11 U.S.C. § 365**

a.    Pursuant to this Plan Debtor shall assume and assign to the Successful Bidder the following executory contracts and leases of non-residential real property:

| Lease/Location | Counterparty | Cure Amount |
|---|---|---|
| Retail Sublease Agreement, dated July 1, 2021, for property located at 709 S. University Boulevard, Denver, Colorado | Recess Campus Lounge Corp. | $5,560.12 |
| Lease of Retail Space, dated January 9, 2013, for property located at 1801 California Street, Denver, Colorado | BOP 1801 California Street LLC and BPREP 1801 California Street Owner LLC | $5,551.38 |
| Lease for property located at 3000 E. 1st Ave., Denver, CO 80202 | Taubman Cherry Creek Shopping Center LLC | $5,430.76 |
| Monthly Recurring Temporary Storage License Agreement –for 559 square feet of storage space located in space #162 at 3000 E. 1st Ave., Denver, CO 80202; and | Taubman Cherry Creek Shopping Center LLC | $0 |
| Lease, dated September 15, 2021, for property located at 1475 Jackson Street, Denver, Colorado | National Jewish Health | $7,576.62 |

14

| United Healthcare | Employee Benefits Policy | $0 |
|---|---|---|
| Facility Services Agreement | Cintas Corporation | $0 |

Cure amounts will be paid by Debtor on the Closing from Available Cash in the amounts identified above, or such other amounts Debtor may identify by filing and serving the updated cure amounts on the impacted landlords no later than 14 days prior to the deadline set to object to the Plan.

**3.** **Distributions of Available Cash**. Within 20 days of the Effective Date, Debtor shall make an initial distribution of Available Cash to holders of Allowed Claims in Class 8. Debtor shall make any final distribution of Available Cash no later than 60 days following the later of (i) the resolution of any objection to the Allowance of Claims in Class 8; and (ii) the conclusion of any litigation or avoidance actions Debtor may bring.

*Distributee Information.* Distributions shall be made by Debtor at the addresses set forth in the following documents: (a) the POC filed by a holder of an allowed Claim (or at the last known addresses of such holder if no POC is filed); (b) a written notice of address change delivered to Reorganized Debtor(s) after the date of any related POC; or (c) at the addresses reflected in Debtor's Bankruptcy Schedules if no POC has been filed and if the Debtor has not received a written notice of change of address. Debtor may require any holder of an Allowed Claim or entitled to a distribution to furnish an Employee Identification Number or Federal Tax Identification Number as assigned by the Internal Revenue Service, and Debtor may condition any distribution to such holder upon receipt of such identification number.

*Unclaimed Property.* Any money or property that is payable under this Plan to a holder of an Allowed Claim will be sent by first class United States Mail, postage prepaid, to the address of the holder of the Allowed Claim. If any such money or property is returned to or by the United States Postal Service undelivered and is not claimed by the holder of the Allowed Claim within ninety (90) days from the date the distribution was made, it will become Cash or property available for distribution free and clear of any claim by the holder thereof, and Reorganized Debtor(s)' obligation to make that payment of money or property will be deemed satisfied in full. No further distributions shall be made on such Allowed Claim unless and until Reorganized Debtor(s) are notified of a current address. Further, if any check mailed to a creditor is not cashed, deposited or otherwise negotiated within ninety (90) days of its mailing, the check will be void, the funds on deposit to cover that check will become Cash available for distribution free and clear of any claim by the creditor or holder of an Equity Interest, and Debtor's obligation to make the payment represented by that check will be deemed satisfied in full. No further distributions shall be made or reserves held on such Allowed Claim unless and until Reorganized Debtor(s) are notified of a current address.

*De Minimus Distributions*. Debtor shall not be required to make any distribution of less than $20.00.

4.     **Vesting of Assets in Debtor/Retention of Claims.** On the Effective Date, Debtor's assets and property shall vest in the reorganized Debtor. All claims arising under §§ 544, 547, 548, and 550 for transfers disclosed in the Debtor's statement of financial affairs shall revest in the reorganized Debtor.

5.     **Existing Equity Interests.** On the Effective Date, all of the existing and outstanding Equity Interests in Debtor shall remain unimpaired.

6.     **Governing Documents.** Debtor's existing governing documents shall remain in effect.

7.     **Management.** On the Effective Date, Debtor's post-confirmation management will be Keith Herbert and John Rose, who shall retainer their pre-confirmation titles and shall not be compensated for the post-confirmation management.

8.     **Recapitalization.**   Debtor, as agent on behalf of the holders of Claims entitled to receive distributions under the Plan, agrees to report to the extent applicable, for federal income tax purposes, the transactions described in this Plan as a recapitalization under Section 368(a)(1)(c) of the Internal Revenue Code, and Debtor shall not adopt any tax filing position that is inconsistent with the position required under this paragraph.

9.     **Wind-down.** Following the Closing of the Sale, Debtor's management shall promptly take such steps necessary to wind-down Ink! Coffee Company, including making arrangements for final tax returns.

## C.     Treatment of Claims

**Administrative Claims.** Under § 1123(a)(1), Administrative Claims are not classified and are not entitled to vote on the Plan. Unless otherwise agreed between Debtor and the holder of an Allowed Administrative  Claim, each such holder shall receive payment from Debtor of such Claim from Available Cash, on the later of (i) the Effective Date; or (ii) as soon as reasonably practicable after such Claim is Allowed by the Bankruptcy Court.  All motions and applications seeking allowance of Administrative Claims incurred prior to the Effective Date shall be filed within sixty (60) days of the Effective Date or shall be deemed disallowed and forever barred.

Unpaid Administrative Claims of professionals are estimated to be approximately $20,000 as of the Effective Date, as follows:

| | |
|---|---|
| OFJP: | $10,000 |
| R2: | $10,000 |
| Accountant | $0.00 |
| Sub V Trustee | $0.00 |

Debtor does not believe that the accountant or Subchapter V Trustee will hold unpaid Administrative Claims on the Effective Date.

Except for holders of ordinary course Administrative Claims, all Administrative Claimants must seek allowance by the Court within 30 days of the Effective Date.

      a.    Ordinary-Course Administrative Claims. Administrative Claims resulting from transactions within the ordinary course of Debtor's business during this Subchapter V Case (including, for example, payment of post-petition rent) shall be paid in full in the ordinary course of business when due, or as otherwise agreed between Debtor and the holder of any such ordinary course Administrative Claim. Holders of ordinary course Administrative Claims shall not be required to file a request for payment of such Claims with the Bankruptcy Court.

    **Priority Tax Claims**. Under § 1123(a)(1), Priority Tax Claims are not classified and are not entitled to vote on the Plan. Unless otherwise agreed, Allowed Priority Tax Claims shall receive payment pro rata from Available Cash, as soon as reasonably practicable after the Effective Date, or within twenty (20) business days after the date the Priority Tax Claim becomes an Allowed Claim. In accordance with § 1123(a)(1), Priority Tax Claims are not designated as a Class and are not entitled to vote.

    **Priority Non-Tax Claims**. Under § 1123(a)(1), Priority Non-Tax Claims are not classified and are not entitled to vote on the Plan. Unless otherwise agreed, Allowed Priority Non-Tax Claims shall receive payment pro rata from Available Cash, as soon as reasonably practicable after the Effective Date, or within twenty (20) business days after the date the Priority Non-Tax Claim becomes an Allowed Claim. In accordance with § 1123(a)(1), Priority Non-Tax Claims are not designated as a Class and are not entitled to vote.

    1.    **Class 1. DIP Loan Claim.** Alternative treatments:

      b.    If Stalking Horse is the Purchaser, then on the Effective Date, the claims arising the under the DIP Loan are deemed satisfied.

      c.    If the Stalking Horse is not the Purchaser, then it retains Liens on post-petition property subject to the Carve Out and for junior Liens on previously encumbered property, it shall retain its Liens on the Cash Sale Proceeds; to be paid remaining Cash Sale Proceeds following satisfaction of Class 2, 3, 4, 5, 6, and 7 Claims.

    2.    **Class 2. Sales Tax Claims and Personal Property Tax Claims**. Class 2 consists of the Secured Claims of the City and County of Denver and the Colorado Department of Revenue which shall be Allowed in the amount of all past due principal, accrued interest, and penalties as of the Effective Date, less adequate protection payments made during the case. The Liens of the City and County of Denver and the Colorado Department of Revenue shall attach to the Cash Sale Proceeds from the Sale, with the same validity, extent, and priority as they existed prior to the Petition Date. This Class is impaired under the Plan, and holders of Claims in this Class will be entitled to vote to accept or reject the Plan.

    3.    **Class 3. Newtek Claim**. Class 3 consists of the Secured Claim of Newtek Small Business Finance LLC ("Newtek"), which shall be Allowed in the amount of all principal, accrued interest, and attorneys' fees and costs as of the Effective Date, less adequate protection payments

made during the case, but only to the extent Cash Proceeds exist after the satisfaction of Allowed Claims in Class 2. The Lien of the Newtek shall attach to the Cash Sale Proceeds from the Sale, with the same validity, extent, and priority as it existed prior to the Petition Date, but only to the extent of the Cash Sale Proceeds. Newtek shall be paid no less than $75,000 This Class is impaired under the Plan, and holders of Claims in this Class will be entitled to vote to accept or reject the Plan. Any Deficiency shall become a General Unsecured Claim under Class 8.

    **4.**    **Class 4. SBA Claim.** Class 4 consists of the Secured Claim of the SBA, which shall be Allowed in the amount of all principal, accrued interest, attorneys' fees and costs, but only to the extent Cash Sale Proceeds exist after the satisfaction of Allowed Claims in Classes 2 and 3. The Lien of the SBA shall attach to the Cash Sale Proceeds from the Sale, after the satisfaction of Allowed Claims in Classes 2 and 3, but only to the extent of the Cash Sale Proceeds. This Class is impaired under the Plan, and holders of Claims in this Class will be entitled to vote to accept or reject the Plan. Any Deficiency shall become a General Unsecured Claim under Class 8.

    **5.**    **Class 5. ARF Financial LLC / Timberland Bank**. Class 5 consists of the Secured Claim of ARF Financial LLC as successor to Timberland Bank, which shall be Allowed in the amount all principal, accrued interest, attorneys' fees and costs, but only to the extent Cash Sale Proceeds exist after the satisfaction of Allowed Claims in Classes 2, 3, and 4. The Lien of ARF Financial LLC shall attach to the Cash Proceeds from the Sale, after the satisfaction of Allowed Claims in Classes 2, 3, and 4 but only to the extent of the Cash Sale Proceeds. This Class is impaired under the Plan, and holders of Claims in this Class will be entitled to vote to accept or reject the Plan. Any Deficiency shall become a General Unsecured Claim under Class 7.

    **6.**    **Kapitus LLC**. Class 6 consists of the Secured Claim of Kapitus LLC, which shall be Allowed in the amount of all principal, accrued interest, attorneys' fees and costs, but only to the extent Cash Sale Proceeds exist after the satisfaction of Allowed Claims in Classes 2, 3, 4, and 5. The Lien of Kapitus LLC shall attach to the Cash Proceeds from the Sale, after the satisfaction of Allowed Claims in Classes 2, 3, 4, and 5 but only to the extent of the Cash Sale Proceeds.. This Class is impaired under the Plan, and holders of Claims in this Class will be entitled to vote to accept or reject the Plan. Any Deficiency shall become a General Unsecured Claim under Class 7.

    **7.**    **Fox Funding Group LLC**. Class 7 consists of the Secured Claim of Fox Funding Group LLC, which shall be Allowed in the amount of all principal, accrued interest, attorneys' fees and costs, but only to the extent Cash Sale Proceeds exist after the satisfaction of Allowed Claims in Classes 2, 3, 4, 5, and 6. The Lien of Fox Funding Group LLC shall attach to the Cash Proceeds from the Sale, after the satisfaction of Allowed Claims in Classes 2, 3, 4, and 5 but only to the extent of the Cash Sale Proceeds. This Class is impaired under the Plan, and holders of Claims in this Class will be entitled to vote to accept or reject the Plan. Any Deficiency shall become a General Unsecured Claim under Class 7.

    **8.**    **General Unsecured Claims**. Class 8 consists of General Unsecured Claims, as described on **Exhibit A**. Holders of Allowed Claims in this Class shall receive pro rata payment from remaining Available Cash, if any, after payment of holders of allowed Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims in prior classes. This Class is impaired

under the Plan, and holders of Claims in this Class will be entitled to vote to accept or reject the Plan. Claims in this Class are estimated to total $237,965.37.

**9.      Class 6, Equity Interests.** Class 6 consists of Allowed Equity Interests in Debtor. On the Effective Date, holders of Equity Interests in Debtor shall retain such interests in accordance with the Debtor's governing documents. This Class is unimpaired under the Plan, and holders of Claims in this Class will not be entitled to vote to accept or reject the Plan.

## V.    LIQUIDATION ANALYSIS AND FEASIBILITY

**A.    Liquidation Analysis / Best Interests of Creditor Test Satisfied**

To confirm the Plan, the Bankruptcy Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such creditors would receive in a liquidation under chapter 7 of the Bankruptcy Code.  The liquidation analysis attached to this Plan as **Exhibit C** demonstrates that the Plan meets this requirement because creditors will receive more under this Plan than in a liquidation.

Debtor notes that the asset values set forth in the liquidation analysis may not match the asset values set forth in Debtor's Schedules. Debtor's estimated values on the liquidation analysis reflect estimated actual liquidation values.

**B.    Feasibility / Ability to Fund Plan**

Debtor proposes to pay creditors from a sale of substantially all of Debtor's assets and Available Cash.  Debtor believes the confirmation of the Plan is not likely to be followed by the need for further financial reorganization.

## VI.    ALLOWANCE AND DISALLOWANCE OF CLAIMS

**A.    Disputed Claims.** Objections to Claims shall be made only by Debtor. Debtor may, at any time up to the three (3) month anniversary of the Effective Date, file an objection to any Claim that in its opinion should be disallowed in whole or in part. The period within which to file such objections may be extended with Bankruptcy Court approval. The objection procedure will apply, without limitation, to all Claims including those arising from the rejection of executory contracts and unexpired leases. Upon the filing of such an objection, such Claim will be considered a Disputed Claim.

**B.     Allowance of Disputed Claims and Payment of Distributions**.  Upon the allowance of a Disputed Claim, by either compromise and settlement or by Final Order, prompt distribution shall be made to the holder thereof of the distributions to which such holder would have been entitled had the Claim been Allowed as of the Effective Date of the Plan, without interest. Future distributions on such Claim shall be made consistent with the timing and terms of distribution to other members of the same Class. No holder of a Disputed Claim shall be entitled to recover any distributions made to other holders of Allowed Claims regardless of any delay in obtaining an order allowing or estimating a Disputed Claim.

**C.      Reserve for Disputed Claims**. Debtor shall make an adequate reserve for all Disputed Claims. The reserved amounts shall equal the amounts that would be paid on such Claims if they were allowed in full.

**D.      Offset and Recoupment**. All offset and recoupment rights of Debtor shall be retained and may be offset or recouped against payment of any Claim or Administrative Claim. Neither the failure to offset nor the allowance of any Claim or Administrative Claim constitutes a waiver or release of any offset or recoupment rights.

## VII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as provided above, all of Debtor's executory contracts and unexpired leases that are not subject to the request to assume above shall be rejected by Debtor.

## VIII.   SUBCHAPTER V TRUSTEE

1.      **Consensual Plan**

If the Plan is confirmed under 11 U.S.C. § 1191(a), the service of the Subchapter V Trustee shall terminate when the Plan has been substantially consummated. Substantial consummation shall be deemed to occur upon the Effective Date of the Plan.

2.      **Non-Consensual Plan**

If the Plan is confirmed on a non-consensual basis under 11 U.S.C. § 1191(b) with respect to Class 8, then except as otherwise provided in the Plan or in the Confirmation Order,  Debtor shall make all payments due under the Plan to holders of Allowed Claims in Class 8 to the Subchapter V Trustee.  The following provisions shall apply to all Claims and disbursements made by Debtor with respect to Classes 8 under the Plan:

a.      Debtor shall file with the Bankruptcy Court, as a supplement to the Plan and provide notice to all creditors in Class 8 at or before confirmation, a list of all holders of Claims in Classes 8, the anticipated total amount to be paid to each such holder under the Plan assuming all such Claims are eventually Allowed and the payment terms and schedule for each such holder under the Plan.

b.      All payments under the Plan will be made by the Subchapter V Trustee to the holder of each Allowed claim in Class 8 (to the extent applicable) at the address of such holder as listed on the Schedules or proof of claim, unless the Subchapter V Trustee has been notified in writing of a change of address.

c.      Any payment required to be made under the Plan on a day other than a business day shall be made on the next succeeding business day.

3.      **Compensation**

Under 11 U.S.C. § 330, the Subchapter V Trustee shall be compensated for services and reimbursed for expenses. However, the method of payment of the Subchapter V Trustee compensation depends on the provision under which the Plan is confirmed and the method of disbursement to creditors under the Plan:

**Application to Bankruptcy Court.** The Subchapter V Trustee will apply to the Bankruptcy Court for an award of compensation through the application process that is used by professionals. The Subchapter V Trustee will file a final fee application for compensation to be heard with the other final fee applications in the case.

a.      **Confirmation on a Consensual Basis.** If the Plan is confirmed on a consensual basis under 11 U.S.C. § 1191(a), then the Subchapter V Trustee's services shall end with substantial consummation of the Plan under 11 U.S.C. § 1183(c)(1), and the Subchapter V Trustee may collect compensation for all services in an amount approved by order of the Bankruptcy Court. Substantial consummation of the Plan under 11 U.S.C. § 1183(c)(1) will be deemed to occur on the Effective Date.  The Subchapter V Trustee's allowed compensation is payable as soon as practicable after an order allowing the same becomes a final, non-appealable order, unless the Subchapter V Trustee agrees to different treatment.

b.      **Confirmation on a Non-Consensual Basis.** If the Plan is confirmed on a non-consensual basis under 11 U.S.C. § 1191(b), then the Subchapter V Trustee will remain in place until all payments have been made to unsecured creditors, and the Subchapter V Trustee may be entitled to additional compensation for services provided after confirmation. The Subchapter V Trustee may file fee applications throughout such period. Upon approval of the Subchapter V Trustee's fee applications in a non-consensual case, Debtor shall pay all fee amounts due to the Subchapter V Trustee as soon as practicable after the order allowing the same becomes a Final Order, unless the Subchapter V Trustee agrees to different treatment.

## IX.    ADDITIONAL PROVISIONS

### A.    Severability

Any provisions that the Bankruptcy Court may determine which render this Plan unconfirmable may be severed or altered at Debtor's option. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### B.    Binding Effect

From and after the Confirmation Date, the provisions of the Plan shall be binding on Debtor and all holders of Claims and Equity Interests, including their successors and assigns, regardless of whether or not such persons have accepted the Plan.

### C.    Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### D.      Amended Claims

Claimants shall not be permitted to amend or otherwise modify any Claim after the later of the Claims Bar Date or the Confirmation Date without the consent of Debtor or entry of an order by the Bankruptcy Court allowing such amendment.  Any amendment to a Claim filed after the later of the Claims Bar Date or the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Subchapter V Trustee or Debtor unless the claimholder has obtained Debtor's prior written consent for or a Bankruptcy Court order authorizing the filing of such amendment. The Subchapter V Trustee and Debtor shall have no obligation to recognize any transfer of any Claim after distributions have started.

### E.      Contractual Relationship and Default Remedies.

The Plan, upon confirmation, constitutes a new contractual relationship by and between Debtor and its creditors. In the event of a default by Debtor under the Plan, creditors shall be entitled to enforce all rights and remedies against Debtor for breach of contract, being the Plan. Any secured creditor claiming a breach of the Plan by Debtor will be able to enforce all of its rights and remedies under its security documents, including foreclosure of its deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document. Any creditor claiming a breach by Debtor must provide written notice to Debtor of the claimed default, and the notice must provide Debtor with a ten (10) business day period within which to cure the claimed default, unless a longer period is specified elsewhere in the Plan. Upon Debtor's failure to cure the default within such ten (10) business day period, the creditor may proceed to exercise its rights and remedies.

Colorado Department of Revenue Rights in the Event of Default. This provision shall only apply to the Allowed Administrative Tax Claims and the Allowed Priority Tax Claims of the Colorado Department of Revenue and the Allowed Class 2 Secured Claim of the Colorado Department of Revenue. Default in this Section is defined as any Reorganized Debtor's failure to make timely payments as required in the Plan to holders of Allowed Administrative Tax Claims and the Allowed Priority Tax Claims of the Colorado Department of Revenue and the Allowed Class 2 Secured Claim of the Colorado Department of Revenue. A condition of default may include, but is not limited to, Reorganized Debtor not remaining in tax compliance post-confirmation as to tax filing and payment obligations. In the event of default, written notice is required on the Reorganized Debtor and Reorganized Debtor's counsel. In the event default is not cured within 10 days from the date of notice in writing, then, regardless of any other Plan provision, the entire pre-petition amount due the Colorado Department of Revenue, as applicable, is immediately due and owing, and the Colorado Department of Revenue, as applicable, shall be able to enforce the obligations as if bankruptcy had not been filed and no stay is then in effect.

### F.      Discharge.

**1.**      Because the Plan provides for the liquidation of Debtor's assets, Debtor may not be eligible for a discharge pursuant to 11 U.S.C. § 1141(d)(3).

**2.      Automatic Stay.** For the avoidance of doubt the automatic stay shall remain in effect until the Effective Date.

**G.      Exculpation. Except as set forth in this Plan, neither the Debtor, nor any of its agents, representatives, attorneys, accountants or advisors shall have or incur any liability in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming the Plan, or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or any other act taken or omitted to be taken in connection with the restructuring of the Debtor pursuant to the Plan during the pendency of the Debtor's Chapter 11 Case and through the date of confirmation of the Plan; provided that the foregoing shall have no effect on the liability for a breach of the Plan or any other document, instrument, or agreement executed and delivered in connection with the Plan, or that otherwise results from any act or omission that is determined in a Final Order to have constituted gross negligence, bad faith, or willful misconduct; provided further that nothing in this Plan shall limit the liability of any retained attorney in violation of Rule 1.8(h)(1) of the Colorado Rules of Professional Conduct. For the avoidance of a doubt, there shall be no liability limitation for the Debtors and their Insiders, for their actions or omissions occurring before the Petition Date, or after the date of any order confirming this Plan, or their actions or omissions after the Petition Date that are not official actions made in good faith, nor shall it release the Debtor from any obligations arising under contracts entered into on a post-petition basis.**

      **1.      Offset and Recoupment**. Nothing in this Plan is intended to alter or modify any creditor's offset or recoupment rights that may arise solely as a result of (and only to the extent of any) action taken by Debtor after the Effective Date.

**H.      Request for Plan Approval if Non-Accepting Class(es) Do Not Vote**. Debtor requests that the Bankruptcy Court confirm the Plan notwithstanding the failure of any Class to vote to accept the Plan. Even if one or more impaired Classes reject the Plan, the Bankruptcy Court may nonetheless confirm the Plan if the non-accepting Classes are treated in a manner prescribed by § 1191 of the Bankruptcy Code. The Bankruptcy Code allows the Plan to bind non-accepting Classes of Claims if it meets all the requirements for consensual confirmation, except the requirements of §§ 1129(a)(8), 1129(a)(10), or 1129(a)(15) of the Bankruptcy Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired Class that has not voted to accept the Plan under the standard of § 1191(c) of the Bankruptcy Code. **Creditors concerned with how these provisions will affect their Claim should seek independent counsel, as the variations on this general rule are numerous and complex.** Debtor will seek the Bankruptcy Court's confirmation of this Plan in accordance with this paragraph at the date and time of the Confirmation Hearing without further notice to creditors or other parties in interest.

**I.      Retention of Jurisdiction**. After the Effective Date and until the case is closed, the Bankruptcy Court shall retain jurisdiction over this Subchapter V Case for the following purposes:

      **1.      Litigation.** To consider, act on, approve, enforce, or resolve any disputes involving causes of action which accrued prepetition.

      **2.      Claim and Equity Interest Objections.** To hear and determine all objections to the allowance, priority or classification of any Claim or Equity Interest and to extend the date or dates by which objections to any Claim or Equity Interest must be filed.

**3.** **Estimate Any Claim or Equity Interest.** To estimate the amount of any Disputed Claim or disputed Equity Interest and to establish the amount of any reserve required to be withheld from any distribution under the Plan on account of any Disputed Claim or disputed Equity Interest.

**4.** **Executory Contracts.** To hear and determine all applications for the assumption and rejection of executory contracts and unexpired leases that are pending as of the Effective Date and to hear all objections to Claims arising therefrom.

**5.** **Title to Assets.** To hear and determine all questions and disputes regarding all causes of action, controversies, adversary proceedings, and contested matters, whether or not pending as of the Confirmation Date, including the right of the estate to recover assets or subordinate claims pursuant to the provisions of the Bankruptcy Code.

**6.** **Modifications.** To consider any modifications of the Plan and to remedy any defect or omission or reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court, including the Confirmation Order.

**7.** **Settlement.** To consider, act on, approve, enforce, or resolve any disputes regarding the compromise and settlement of any Claim or cause of action by or against Debtor.

**8.** **Execution.** To issue orders in aid of execution of the Plan as contemplated by Section 1142 and to adjudicate controversies arising out of the implementation of the Plan.

**9.** **Tax Matters.** To hear and determine any tax disputes concerning taxes accruing prior to the Effective Date concerning Debtor's estate.

**10.** **Other Matters.** To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order.

**J.** **Closing of Case.** If this Plan is confirmed under 11 U.S.C. § 1191(a), the Effective Date has occurred, and the Bankruptcy Court has entered an order on all fee applications, Debtor shall request the Bankruptcy Court to enter an order closing the case and the Bankruptcy Court may close the case if there are no pending contested matters or adversary proceedings. If this Plan is confirmed under 11 U.S.C. § § 1191(b) and the Effective Date has occurred and all payments due under the Plan in respect of claims in Classes 1 through 8 (if and as  applicable) have been completed, Debtor may request the Bankruptcy Court to enter an order closing the case and the Bankruptcy Court may close the case if there are no pending contested matters or adversary proceedings.

Dated: November 4, 2024

INK! COFFEE COMPANY

By: *s/ Keith Herbert*
        Keith Herbert
        Chief Executive Officer

**ONSAGER | FLETCHER | JOHNSON | PALMER LLC**

*s/ Andrew D. Johnson*
      Andrew D. Johnson, #36879
      Gabrielle G. Palmer, #48948
600 17th Street, Suite 425 North
Denver, Colorado 80202
Ph: (720) 457-7061
ajohnson@OFJlaw.com
gpalmer@OFJlaw.com

*Attorneys for Ink! Coffee Company*

## <u>LIST OF EXHIBITS</u>

| Exhibit # | Description |
|-----------|-------------|
| Exhibit A | General Unsecured Claims |
| Exhibit B | Liquidation Analysis |

# **EXHIBIT A**

**General Unsecured Claims – Class 8**

## **EXHIBIT B**

**Liquidation Analysis**